UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| PAMELA L., | Case No. 3:23-cv-00533-AR |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| COMMISSIONER SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

**ARMISTEAD, Magistrate Judge**

In this judicial review of the Commissioner's final decision denying Social Security benefits, Pamela L. (last name omitted for privacy) challenges the Administrative Law Judge's evaluation of her subjective symptom testimony, the medical opinion of Kellie Osterbaan, PsyD., and the lay opinion of Leatha Carter. (Pl.'s Br. at 3, 10, 11.) As explained below, although the ALJ erred in discounting plaintiff's testimony based on her activities of daily living, the ALJ identified other clear and convincing reasons that are supported by substantial evidence and,

Page 1 – OPINION AND ORDER

therefore, that error is harmless. The ALJ did not err in finding Dr. Osterbaan's opinion unpersuasive and provided germane reasons for discounting Carter's lay testimony. The Commissioner's decision therefore is AFFIRMED.[1]

## ALJ'S DECISION

In denying plaintiff's application for Title II Disability Insurance Benefits (DIB) and Title XVI Supplemental Security Income (SSI), the ALJ followed the five-step sequential evaluation process.[2] As a preliminary matter, the ALJ determined plaintiff met the insured status through December 31, 2019. (Tr. 17.) At step one, the ALJ determined plaintiff had not engaged in substantial gainful activity since January 3, 2018.[3] At step two, the ALJ determined that plaintiff had severe impairments including: degenerative disc disease, left shoulder degenerative joint disease, status post aneurism coiling with mild transient ischemia attack (TIA), restless leg syndrome (RLS), obesity, PTSD, depression, and generalized anxiety disorder. (Tr. 17-18.) At step three, the ALJ determined that plaintiff's impairments, singly or in combination, did not meet or medically equal the severity of any listed impairment. (Tr. 19.)

As for the RFC, the ALJ found that plaintiff could perform light work with the following additional limitations:

---

[1] This court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3), and the parties have consented to jurisdiction by magistrate judge under Federal Rule of Civil Procedure 73 and 28 U.S.C. § 636(c).

[2] To determine a claimant's disability, the ALJ must apply a five-step evaluation. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If the ALJ finds that a claimant is either disabled or not disabled at any step, the ALJ does not continue to the next step. *Id.*; *see also Parra v. Astrue*, 481 F.3d 742, 746-47 (9th Cir. 2007) (discussing the five-step evaluation in detail).

[3] The ALJ incorrectly identified plaintiff's onset date as September 1, 2019, in her opinion. Plaintiff amended her onset date to January 3, 2018, both by letter and at the hearing. *See* Tr. 44, 282.

Page 2 – OPINION AND ORDER

>  [S]he can frequently climb ramps and stairs; can occasionally climb ladders, ropes, scaffolds; can frequently stoop and crawl; should have no more than frequent exposure to extreme cold, extreme heat, loud industrial noise, vibrations, and hazards (such as unprotected heights and exposed moving mechanical parts); and has sufficient concentration, persistence, and pace to complete short and simple tasks for a normal workday and workweek with normal breaks.

(Tr. 21.)

At step four, with that RFC, the ALJ found plaintiff is unable to perform any past relevant work. (Tr. 29.) Considering plaintiff's age, education, work experience, and RFC, the ALJ determined at step five that jobs exist in significant numbers in the national economy that she could perform, including the representative occupations of cafeteria attendant, cleaner housekeeper, and small products assembler.[4] (Tr. 29-30.)

The district court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020). Substantial evidence is "more than a mere scintilla" and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotation and citation omitted). To determine whether substantial evidence exists, the court must weigh all the evidence, whether it supports or detracts from the Commissioner's decision. *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014).

\\\\\

\\\\\

---

[4] As noted in *White v. Kijakazi*, 44 F.4th 828, 835 (9th Cir. 2022), the SSA has been working on a transition to a new Occupational Information System since 2008. The transition has not yet occurred, and the Ninth Circuit has encouraged the SSA, along with its sister circuits, "to make the transition to a system that more accurately reflects available jobs in the current economy." *Id.*

Page 3 – OPINION AND ORDER

# DISCUSSION

**A.**     *Subjective Symptom Testimony*

To determine whether a claimant's testimony about subjective pain or symptoms is credible, an ALJ must perform two stages of analysis. *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017); 20 C.F.R. § 416.929. The first stage is a threshold test in which the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. *Treichler v. Comm'r Soc. Sec. Admin.*, 775 F.3d 1090, 1102 (9th Cir. 2014); *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). At the second stage, absent affirmative evidence that the claimant is malingering, the ALJ must provide clear and convincing reasons for discounting the claimant's testimony about the severity of her symptoms. *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). The ALJ must make findings that are specific enough to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015). Factors the ALJ may consider when making those credibility determinations include the objective medical evidence, the claimant's treatment history, the claimant's daily activities, and inconsistencies in testimony. *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2013); *Tommasetti*, 533 F.3d at 1039.

At her administrative hearing and in her function reports, plaintiff stated that she cannot work because of her physical pain and debilitating anxiety. (Tr. 50-51, 323.) She testified that she is unable to work because her body is "broken down" and she has constant pain. (Tr. 50-51.) She stated that she must "take breaks to get off [her] feet or regroup to focus on what [she] is doing." (Tr. 323.) Plaintiff testified that she has pain in her feet that feels like she is "walking on

Page 4  – OPINION AND ORDER

rocks" and that her ankles and knees "give out." (Tr. 51.) Plaintiff stated that, although she goes to the grocery store for her parents, she often will avoid the trip due to her anxiety, and only shops in stores one or two times a month. (Tr. 51, 324, 326.) Plaintiff testified that she no longer takes her two dogs outside and is looking to rehome them. (Tr. 50.)

The ALJ discounted plaintiff's symptom testimony because statements regarding her work history, her activities of daily living, and her medical treatment history were inconsistent with her claimed symptom severity and limitations. Plaintiff challenges each of the ALJ's reasons.

   1.   **Inconsistent Statements Regarding Work History**

At the hearing, plaintiff testified that she is self-employed as a house cleaner, and that she had worked "between seven and eight hours a day twice a week, sometimes three times a week" until 2018. (Tr. 45-46.) Upon further questioning by the ALJ, plaintiff stated that she reduced her hours worked to "on average" ten hours a week in 2018, but that the number was just an estimate, as her memory was "really bad." (Tr. 46.) Plaintiff now argues that the ALJ used that testimony to create a conflict where none existed—by first acknowledging that plaintiff merely provided an estimate as to when she reduced her working hours, and then using the estimated hours to undermine her symptom testimony despite plaintiff explaining that she has a bad memory. (Pl. Br. at 6, citing Tr. 46.) Plaintiff further asserts that the ALJ erred by using the "supposed conflict" to undermine her general credibility, rather than providing specific examples of testimony and the evidence that undermines that testimony, as required under Ninth Circuit law. (Pl. Br. at 7.)

In the decision, the ALJ pointed out that, although plaintiff reported reducing her work hours in February 2018 due to her medical conditions, plaintiff's work history report failed to

Page 5  – OPINION AND ORDER

show any work in 2018, and that she had no work above the level of substantial gainful activity (SGA) since December 2013. (Tr. 22, citing Tr. 309-10, 321.) The ALJ concluded that plaintiff's "inconsistent report of reducing work activities in early 2018 suggests that some of her statements about her symptoms and related limitations are not entirely reliable." (Tr. 22.)

The ALJ did not err in considering plaintiff's inconsistent statements regarding her work history. Indeed, an ALJ may consider many factors when weighing a claimant's credibility, including prior inconsistent statements concerning the symptoms and other testimony by the claimant that appears less than candid. *Tommasetti*, 533 F.3d at 1039. Furthermore, plaintiff's argument that the ALJ relied on her hearing testimony when finding her statements to be inconsistent is not supported by the record. The ALJ did not cite plaintiff's hearing testimony where she testified her dates and hours worked were mere estimates. The ALJ's decision cited only work history records submitted by plaintiff in connection with her disability application, and an SGA evaluation conducted by agency representatives. Because plaintiff had no work in 2018, her alleged onset date, and her records reveal that she has had no SGA since 2013, the ALJ could reasonably infer that her reduced hours are unrelated to her alleged limitations and discount her testimony on that basis. That finding is supported by substantial evidence and is sufficiently specific to allow the court to meaningfully review the ALJ's reasoning. As such, the ALJ did not err.

2. **Activities of Daily Living**

An ALJ may reject symptom allegations that are inconsistent with a claimant's ability to perform normal ADLs. *Smartt v. Kijakazi*, 53 F.4th 489, 499-500 (2022); 20 C.F.R. § 416.929(c)(3)(i)). There are two ways ADLs may support such rejection: (1) the ADLs contravene the claimant's allegations of functional limitations; or (2) the ADLs "meet the

Page 6 – OPINION AND ORDER

threshold for transferrable work skills[.]" *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). "Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally disabling impairment." *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. § 404.1520(a).

Plaintiff argues that the ALJ erred in discounting her testimony based on her daily activities because the ALJ failed to identify any specific activities that exceeded her stated limitations, or that could translate to full-time work. (Pl. Br. at 10.)

The ALJ pointed to reports from plaintiff that she "tak[es] care of her parents, driving them to appointments, running errands, getting groceries, and sometimes trimming bushes." (Tr. 25.) The ALJ further noted that plaintiff takes care of two dogs by herself, lives alone, carries out household chores alone, drives, shops, and manages her own funds. (Tr. 25.) The ALJ cited records from 2019 where plaintiff reported spending "a great deal of time" working as a Jehovah's Witness. (Tr. 25, citing Tr. 424.) Although those activities raise questions about portions of plaintiff's testimony, the ALJ failed to link those activities with which symptoms and limitations testified to by plaintiff. *See Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (an ALJ must identify "*which* daily activities conflicted with *which* part of [plaintiff's] testimony").

Furthermore, the ALJ's attempt to link specific symptom testimony to activities inconsistent with that testimony falls short of the standard required for clear and convincing rationale. For example, the ALJ cited a treatment note from 2021 that "referenced [plaintiff] going to the airport (PDX), which seems inconsistent with her testimony of mostly staying home due to anxiety." (Tr. 25, citing Tr. 1948.) However, the record cited by the ALJ does not indicate when plaintiff went to PDX, and counseling notes say "[d]iscussed [history] of trauma going to

Page 7 – OPINION AND ORDER

PDX when 'someone pulled a gun out of their trunk and pointed it at us.'" (Tr. 1948.) Nothing about the context of the note indicates the timing of the traumatic event, beyond that it was historical. As such, the court cannot conclude this example amounts to an inconsistency between plaintiff's testimony and her activities. Additionally, the ALJ stated that plaintiff "testified that she could not even go to the grocery store due to anxiety, but also testified that grocer[y] stores were one of the places she goes, which suggests that some of her statements about her limitations in activities of daily living are not entirely reliable." (Tr. 25.) This misrepresents plaintiff's testimony, as she testified that she can "hardly even get out of the house to get groceries" and clarified that at times, she will drive by the store without stopping for groceries due to anxiety. (Tr. 51.) Nowhere does plaintiff attest to being completely unable to go to the grocery store.

The ALJ's analysis failed to identify clear and convincing reasons backed by substantial evidence to show that that plaintiff performed activities that are inconsistent with her allegations. Because the ALJ did not explain "*which* daily activities conflicted with *which* part of [plaintiff's] testimony," the ALJ erred. *See Burrell*, 775 F.3d at 1138; *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001) ("[T]he ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony.").

### 2. Routine, Limited Treatment and Improvement with Treatment

Plaintiff contends that the ALJ erred in evaluating her medical treatment history. First plaintiff argues that the ALJ erroneously relied on routine and conservative treatment, because she failed to identify less-conservative treatments that might be effective are available. Plaintiff also asserts the ALJ failed to identify what testimony was rejected in concluding her spinal disorders and shoulder condition "would not prevent her from working full time." (Pl. Br. at 23.) Finally, plaintiff argues the ALJ made only general credibility findings with regard to plaintiff's

Page 8 – OPINION AND ORDER

mental health symptom testimony, again failing to link specific testimony to evidence.

An ALJ may rely on limited treatment or lack of treatment when considering a plaintiff's symptom allegations. *See* 20 C.F.R. § 404.1529(c)(3)(v); SSR 16-3p, *available at* 2017 WL 5180304, at *9 (ALJ may consider frequency and extent of treatment sought when evaluating the alleged intensity and persistence of a claimant's symptoms). Additionally, evidence of medical treatment successfully relieving symptoms can undermine a claim of disability. *See* 20 C.F.R. § 416.920a(c)(1); *see also Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling") (citations omitted).

The ALJ discounted her symptom allegations because (1) records show plaintiff's treatments were routine and limited in nature; and (2) she reported improvement to her mental health, including full resolution of her panic attacks. The ALJ's conclusions here are specific, clear and convincing. As noted, plaintiff's records show only minimal and routine treatment for her impairments during the relevant time period. (*See* Tr. 450-503, 529, 799-806, 835-36, 1516-20, 1762.) The ALJ identified specific instances where plaintiff complained to providers of back pain, but noted plaintiff did not seek additional evaluation from a specialist, relying mostly on physical therapy and acupuncture for symptom relief. (Tr. 23, citing Tr. 464, 468, 480, 484, 498.) Plaintiff's shoulder pain was initially evaluated in 2017, prior to her AOD. (Tr. 23, citing Tr. 687.) The ALJ also noted that during the relevant time, plaintiff rarely complained of shoulder pain, and did not appear to follow up on referrals for additional treatment such as aqua therapy. (Tr. 23, citing Tr. 1762.) Contrary to plaintiff's assertions, the ALJ identified alternative and more aggressive treatment options plaintiff could have pursued, including following up on and seeking additional evaluation of her conditions from specialists, and requesting alternative

treatment methods such as energy treatment for back pain, and more robust pain medication. (Tr. 23, 24.) The ALJ's findings are a reasonable interpretation of the record and are backed by substantial evidence.

Finally, the ALJ did not err in concluding that plaintiff's mental health symptoms were controlled with medication. Plaintiff's records show that her emotional attacks were sufficiently controlled with symptoms of panic abating within ten minutes of taking half a lorazepam. (Tr. 1891.) Plaintiff ceased mental health therapy in 2021, due to schedule conflicts. (Tr. 25, citing Tr. 1825.) She reported that she was going to "be safe without counseling," declining an option for less frequent therapy sessions and referrals to other mental health resources. (Tr. 1825.) Contrary to plaintiff's contention, the ALJ did not cherry-pick the record and linked specific testimony to evidence in the record undermining that testimony. Accordingly, the ALJ has provided specific, clear and convincing reasons, supported by substantial evidence for discounting plaintiff's symptom testimony.

Plaintiff makes a passing reference to the ALJ's objective medical analysis, stating that "[t]hroughout the decision, the ALJ is erroneously critical of the state of the objective evidence, and essentially requires full objective corroboration." (Pl. Br. at 8.) To the extent that plaintiff is contending that the ALJ erred in discounting plaintiff's subjective symptom testimony because it is not supported by objective medical evidence, that argument is undeveloped. In her opening brief, plaintiff provides no specific examples beyond that discussed above of the asserted error for the court to consider.

In short, although the court has identified an error in the ALJ's assessment of plaintiff's subjective symptom testimony, ultimately that error is harmless, because the ALJ provided other clear and convincing rationales supported by substantial evidence to support the conclusions. *See*

*Carmickle*, 533 F.3d at 1162 (upholding the ALJ's overall credibility finding despite finding some credibility factors were invalid).

B.  **Kellie Osterbaan's Medical Opinion**

The regulations require that ALJs evaluate the supportability and consistency of a medical opinion when assessing its persuasiveness. 20 C.F.R. § 404.1520c. ALJs must "articulate . . . how persuasive [they] find all of the medical opinions" and "explain how [they] considered the supportability and consistency factors." *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022) (quoting 20 C.F.R. § 404.1520c(b)(2)). Supportability is determined by assessing whether the medical source provides explanations and objective medical evidence to support their opinion. 20 C.F.R. § 416.920c(c)(1). Consistency is determined by evaluating how consistent the opinion is with evidence from other medical and nonmedical sources in the record. 20 C.F.R. § 416.920c(c)(2).

Plaintiff argues that the ALJ improperly rejected Dr. Osterbaan's opinion and failed to explain her supportability and consistency analysis, as required by agency rules. (Pl. Br. at 11-12.) Specifically, plaintiff alleges the ALJ erroneously relied on conflicts between Dr. Osterbaan's opinion about her concentration and the record that were not supported by substantial evidence.

Dr. Osterbaan submitted a treating source mental health questionnaire dated January 10, 2022, assessing plaintiff as markedly limited in maintaining attention and concentration, and moderately limited in responding appropriately to criticism from supervisors and changes in the workplace. (Tr. 2034-36.) The ALJ found Dr. Osterbaan's opinion unpersuasive because her treatment notes did not show any observations of difficulty with attention and concentration to

support a marked limitation. (Tr. 28, citing Tr. 1948-50, 2028-32.) Additionally, the ALJ concluded Dr. Osterbaan's opinion was inconsistent with

> the relatively routine mental health treatment, the report of panic attacks resolving with treatment, the observations of normal concentration and memory, the observations of normal mood and affect in many appointments, the lack of reports to providers of persistent difficulty functioning outside of the home, and the claimant's function report, which indicates that she can interact appropriately with authority figures."

(Tr. 28, citing 328, 549, 800-06, 841-46, 1516-20, 1552-1607, 1675, 1687, 1803-71, 1891, 1995, 2001.) Further, the ALJ found Dr. Osterbaan's assessed marked limitations inconsistent with her ability to perform some work, assist others with errands and shopping, care for pets, engage in church activities, drive, and prepare meals. (Tr. 28-29, citing Tr. 323, 424, 843, 1591, 1601, 1948.)

As the ALJ found, Dr. Osterbaan's own treatment notes do not assess plaintiff with the level of limitations proffered in her opinion; thus, the ALJ adequately discussed how the supportability factor was considered. And as highlighted above, the ALJ described how her opinion was inconsistent with other medical evidence in the record. The ALJ's reasons on supportability and consistency are supported by substantial evidence in the record. Accordingly, the ALJ did not err in finding Dr. Osterbaan's opinion unpersuasive.

C.   *Lay Testimony of Leatha Carter*

Lay witness testimony about a claimant's symptoms is competent evidence that an ALJ must consider unless she "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). An exception to the rule applies, however, "[w]here lay witness testimony does not describe any limitations not already described by the claimant, and the ALJ's well-supported reasons for

Page 12 – OPINION AND ORDER

rejecting the claimant's testimony apply equally well to the lay witness testimony." *Molina*, 674 F.3d at 1118-19; *see also Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009) ("In light of our conclusion that the ALJ provided clear and convincing reasons for rejecting [the claimant's] own subjective complaints, and because [the claimant's wife's] testimony was similar to such complaints, it follows that the ALJ also gave germane reasons for rejecting her testimony.").

In September 2020, plaintiff's friend, Leatha Carter, provided a third-party function report, attesting to plaintiff's limitations. Plaintiff argues that the ALJ failed to provide reasons germane for rejecting Carter's lay witness testimony. (Pl. Br. at 10-11.) Plaintiff further asserts that the ALJ erred in failing to identify which of Carter's statements she found to be inconsistent with the record. (Pl. Br. at 11.)

The ALJ found Carter's testimony unpersuasive. Although Carter's opinion was "generally consistent" with plaintiff's allegations, the ALJ concluded Carter had assessed greater limitations than those within the RFC. The ALJ further described how Carter's statement was inconsistent with

> routine neurology appointments for the aneurysm, the lack of neurology appointments after 2020, the lack of evidence showing significant and/or persistent complications from the aneurysm or TIA, the limited treatment for headaches and vision disturbances, the relatively limited treatment for spinal disorders during the period at issue, the medical imaging showing no more than moderate spinal abnormalities, the observations of normal strength and mostly normal gait, and the limited observations of pain behavior, the x-ray showing only mild left shoulder disorder, the limited treatment for shoulder symptoms, the lack of observations showing signs of significant and persistent dysfunction in the upper extremities, the relatively routine mental health treatment, the report of panic attacks resolving with treatment, the observations of normal concentration and memory, the observations of normal mood and affect in many appointments, the lack of reports to providers of persistent difficulty functioning outside of the home, and the evidence of activities of daily living including working part time, helping parents with errands and other activities, taking care of pets, doing church

activities, driving, shopping in stores, preparing meals, and doing housework without assistance.

(Tr. 26).

The ALJ sufficiently addressed Carter's opinion and provided adequate, germane reasons for rejecting it. Plaintiff argues that the ALJ failed to specify which of Carter's statements were inconsistent with the record, but ALJs are not required to link specific lay testimony to specific evidence to discount it; that level of detailed analysis is required only when analyzing a claimant's testimony, not that of a lay witness. *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009) (holding ALJ's are required to consider lay witness testimony and provide "reasons germane to each witness" to properly reject it). The ALJ here met both requirements as she specifically considered Carter's statements and determined that they were substantively similar to plaintiff's symptom testimony. The ALJ then provided reasons relevant to Carter's testimony, including medical treatment history and daily activities, that were inconsistent with her described limitations. The ALJ did not err.

## CONCLUSION

For the above reasons, the court AFFIRMS the Commissioner's final decision.

DATED: August 23, 2024

_____
JEFF ARMISTEAD
United States Magistrate Judge